UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MS. Q., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.,* <br><br> Defendants. | Civil Action No. 18-02409 (PLF) |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**[1]

Defendants U.S. Immigration and Customs Enforcement ("ICE"), Ronald D. Vitiello, in his official capacity as ICE Deputy Director and Senior Official Performing the Duties of the Director, the U.S. Department of Homeland Security ("DHS"), Kirstjen Nielsen, in her official capacity as DHS Secretary, and Matthew G. Whitaker, in his official capacity as Acting Attorney General of the United States (collectively, "Defendants") respectfully submit this Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion For Preliminary Injunction ("Motion").[2] For the reasons set forth below, Defendants respectfully request that the Court deny Plaintiffs' Motion.

---

[1] This Memorandum was originally filed on November 9, 2018, as ECF No. 21. However, it is being re-filed so that certain redactions to the attached exhibits that were not made in the original filing can be included at Plaintiffs' request.
[2] Defendants oppose the Motion but by doing so do not waive and expressly reserve all defenses to Plaintiffs' claims.

## BACKGROUND

### A.    Factual Background

Ms. Q. is a native and citizen of El Salvador who was apprehended near the border with Mexico in March 2018, after she illegally entered the United States between designated points of entry with her minor son, J. U.S. Customs and Border Protection ("CBP") identified her as a member of the violent MS-13 street gang with a pending warrant issued in El Salvador (*see* Ex. A) and detained her separate and apart from her child due to her alleged criminal activities. She remained at a detention facility in Laredo, Texas  Ms. Q. was transferred into ICE custody on March 25, 2018, and she now remains in ICE custody at the Laredo Processing Center. Her minor son was transferred into the custody of the U.S. Department of Health and Human Services ("HHS"), Office of Refugee Resettlement ("ORR"), on March 25, 2018, where he now remains.

Ms. Q. was originally placed into expedited removal proceedings. She made a claim of fear of returning to her country of origin, and upon referral to a Credible Fear Interview ("CFI") she received a positive credible fear determination by the asylum office on March 30, 2018. She was then placed in removal proceedings on April 4, 2018. On July 31, 2018, the immigration judge denied her request for a redetermination of custody conditions, and she was denied bond because she could not establish that she was not a flight risk. She sought asylum, withholding of removal, and deferral under the Convention Against Torture ("CAT"). *See* Ex. B.

On October 16, 2018, an immigration judge denied Ms. Q.'s asylum, withholding, and CAT applications. *See* Ex. C. On October 19, 2018, Ms. Q. filed an appeal of that denial, and on October 29, 2018, the Board of Immigration Appeals rejected her appeal notice. She is still within the 30-day appeal period. DHS has not reunited Ms. Q. with her minor son due to her

alleged criminal activities, which excludes her from the class as defined in *Ms. L. v. ICE*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018). *See* Ex. D. On August 14, 2018, the American Civil Liberties Union ("ACLU") requested a reconsideration of the denial of reunification because it argued the only evidence of criminal activity was a warrant from El Salvador, and Ms. Q.'s counsel has argued that there are inconsistencies in the warrant and that the underlying charges are unfounded. On September 19, 2018, Judge Sabraw of the United States District Court for the Southern District of California ("S.D. Cal.") issued a decision in *Ms. L.* addressing Ms. Q.'s specific request to be included in the class despite her active warrant for arrest. *Ms. L. v. ICE*, Civ. A. No. 18-0428, ECF No. 236 at 3 (S.D. Cal. Sept. 19, 2018). *See* Ex. D. The court found that the government had properly vetted Ms. Q. and properly excluded her from the class of aliens that must be reunified with their minor children due to her criminal history and concerns regarding the safety of her child and the public.

The arrest warrant in question was issued by the Court of Ajacuta, Department of Sonsonante, in El Salvador on December 13, 2016, charging Ms. Q. with being a member of a "terrorist organization."[3] *See* Ex. A. Police issued an arrest order on February 16, 2017. A fugitive arrest warrant based on the same charge was issued by the same court in El Salvador on June 21, 2018. *See* Ex. E. Police issued the arrest order on July 24, 2018. On August 20, 2018, the government of El Salvador verified the warrant and verified that the identity of the person on the warrant matched Ms. Q.

On August 30, 2018, INTERPOL issued a Red Notice at the request of the government of El Salvador, which specified that Ms. Q. is an active member of the MS-13 gang and participates

---

[3] The warrant charges that Ms. Q. is a member of a "terrorist organization," as defined under Salvadoran law. The warrant alleges that Ms. Q. is involved with the MS-13 gang, which has been designated as a terrorist organization in El Salvador.

in activities such as extortion, homicides, and other acts in violation of Salvadoran law. *See* Ex. F.

On October 3, 2018, the government of El Salvador gave the ICE attaché in San Salvador a letter certifying the validity of the arrest warrant issued against Ms. Q. *See* Ex. G. The government of El Salvador has expressed continued interest in the capture of Ms. Q. and continues to work with ICE on this matter.

### B.      Family Residential Centers

ICE currently oversees three family residential centers ("FRCs"): the Karnes FRC in Kansas City, Texas can house up to 830 individuals; the South Texas FRC in Dilley, Texas can house up to 2,400 individuals; and the Berks County Residential Center in Berks County, Pennsylvania can house up to 96 individuals. Declaration of Mellissa B. Harper ("Harper Decl.") ¶ 2. FRCs operate under the ICE Family Residential Standards ("FRS"). The FRS promote a unique, non-secure, open-movement environment which permits parents and children to live in a dorm-like environment with access to education, recreational opportunities, and health care on-site. The FRS were developed with input from medical, psychological, and educational subject matter experts and various organizations such as the DHS Office of Civil Rights and Civil Liberties ("CRCL") and many non-governmental organizations ("NGOs"). *Id.* at ¶ 3.

Family units have freedom of movement throughout the FRCs during daytime hours. Residents have access to libraries, recreational facilities, and playrooms. The focus of the FRCs is to have an environment that encourages family health and safety by providing child-friendly amenities and services in an environment that is conducive to healthy family interactions. Families interact with each other throughout the day. FRCs are staffed with contracted Resident Advisors in lieu of security officers. *Id.* at ¶ 4.

Due to the nature of family detention at the FRCs, ICE does not house individuals with criminal histories in these facilities. Because of the open movement permitted within these facilities, housing individuals with criminal convictions or individuals who have a history of unlawful activity presents an unacceptable risk of harm to the other families residing at the FRCs. Violence, threats, and other behavior that could diminish the safety of residents at an FRC is simply not tolerated. *Id.* at ¶ 5.

The safety of residents at the FRCs is also a legal obligation. Under the *Flores* Settlement Agreement and *Flores v. Lynch*, 828 F.3d 898, 905 (9th Cir. 2016) (finding that the terms of the *Flores* Settlement Agreement applies to accompanied minors), ICE must ensure the safety and well-being of all minors in its custody, including those housed with their parents at an FRC. *Id.* at ¶ 6.

## **STANDARD OF REVIEW**

Temporary restraining orders and preliminary injunctions are "extraordinary and drastic remed[ies]" that can only be granted "upon a clear showing that the plaintiff in entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Gold v. Maurer*, 251 F. Supp. 3d 127, 131 (D.D.C. 2017); *Gerber Prods. Co. v. Vilsack*, Civ. A. No. 16-1696, 2016 WL 4734357, at *3 (D.D.C. Sept. 9, 2016). Specifically, a plaintiff must show: (1) a substantial likelihood of success on the merits; (2) that plaintiff would suffer irreparable harm absent an injunction; (3) that the balance of equities tips in plaintiff's favor; and (4) that the public interest will be furthered by the injunction. *See, e.g., Gold*, 251 F. Supp. 3d at 132.

Moreover, when "the injunction requested is a mandatory one that would require defendant to undertake 'some positive act,' the movant 'must meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious

damage will result from the denial of the injunction.'" *Sai v. TSA*, 54 F. Supp. 3d 5, 8 (D.D.C. 2014) (quoting *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997), *aff'd*, 159 F.3d 636 (D.C. Cir. 1998)); *see also Dorfman v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969) ("The power to issue a preliminary injunction, especially a mandatory one, should be 'sparingly exercised.'").

## ARGUMENT

### I. Injunctive Relief Is Not Appropriate Where Plaintiff Does Not Seek to Preserve the Status Quo.

A party seeking a preliminary injunction bears the burden of showing that "(1) there is a substantial likelihood plaintiff will succeed on the merits; (2) plaintiff will be irreparably injured if an injunction is not granted; (3) an injunction will not substantially injure the other party; and (4) the public interest will be furthered by an injunction." *Barton v. District of Colum.*, 131 F. Supp. 2d 236, 241 (D.D.C. 2001) (quoting *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998)); *see also Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *Gordon v. Holder*, 632 F.3d 722, 724 (D.C. Cir. 2011); *Banks v. Harrison*, 864 F. Supp. 2d 142, 145 (D.D.C. 2012).[4] Moreover, it has been recognized that the standard for a preliminary injunction should be heightened when, as here, "a plaintiff seeks an injunction that would alter the status

---

[4] Traditionally, courts have analyzed those factors on a "sliding scale," balancing them against each other. *Barton*, 131 F. Supp. 2d at 241 (citing *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)) (citations and quotation omitted). Under that approach, the "four factors are not considered in isolation from one another, and no one factor is necessarily dispositive as to whether preliminary injunctive relief is warranted." *Id*. But, "[r]ecently, the continued validity of that approach has been called into some doubt, as the . . . [D.C.] Circuit has suggested, without holding, that a likelihood of success on the merits is an independent free-standing requirement for a preliminary injunction." *TD Bank NA v. Pearl*, 891 F. Supp. 2d 103, 106 (D.D.C. 2012). Judges in this Circuit have also suggested that "a party moving for a preliminary injunction must meet [all] four independent requirements." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J. &

quo rather than merely preserve it (*i.e.*, a mandatory injunction)." *English v. Trump*, 279 F. Supp. 3d 307, 316 (D.D.C. 2018) (citing *Elec. Privacy Info. Ctr. v. DOJ*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) (collecting cases)). Under that heightened standard, "the moving party must "clearly" show that "he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo–Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997), *aff'd*, 1998 U.S. App. LEXIS 7871, at *2 (D.C. Cir. 1998) ("we need not reach the question of whether the district court erred in holding that the standard applicable to a mandatory preliminary injunction is higher than that applicable to a prohibitory preliminary injunction because, as the district court also held, the appellants fail even under the lower standard that they advocate").

Here, the Plaintiff requests "preliminary" injunctive relief that is one and the same with the ultimate relief sought in this case – the reunification of Ms. Q. with her son while she appeals her asylum claim. *Compare* Compl. at 21 *with* Pl.'s Mot. at 7. Plaintiff's motion thus inverts the fundamental purpose of preliminary injunctive relief, which is "merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Moreover, in this case, this is especially true because the plaintiff is essentially seeking to re-litigate claims that were previously presented and decided in *Ms. L. v. ICE*, Civ. A. No. 18-0428, ECF No. 236 at 3 (S.D. Cal. Sept. 19, 2018).

## II. Plaintiff Cannot Demonstrate a Likelihood of Success on the Merits.

### A. The Court Lacks Jurisdiction Over Plaintiff's Claims

Claims such as those brought by Plaintiffs must be directed at the person with custody and control over Plaintiffs as a writ of habeas corpus, and that person would be located in the

---

Henderson, J., concurring). The Court need not resolve that open question here because

Western District of Texas or the Northern District of Illinois. *See Rumsfeld v. Padilla*, 542 U.S. 426, 427 (2004) (For "core" habeas challenges—defined as "challenges to present physical confinement"—brought under 28 U.S.C. § 2241, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."); *see also* 28 U.S.C. § 2243 (providing that "[t]he writ, or order to show cause, shall be directed to the person having custody of the person detained."). Here, it is not clear that Plaintiffs are actually challenging their detention in federal custody. However, to the extent Plaintiffs are raising a claim under 28 U.S.C. § 2241, this Court lacks jurisdiction over such claims because they must be directed at the person with custody and control over Plaintiffs, and that person would be not be located in the District of Columbia. *See Padilla*, 542 U.S. at 443 ("[F]or core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."); *see also id.* at 442-43 (citing *Braden v. 30th Judicial Cir. Ct. of Ky.*, 410 U.S. 484, 495 (1973)) (stating that to have jurisdiction over a habeas action, a federal court must have jurisdiction over the properly named custodian).

### B. Plaintiffs Are Not Likely To Succeed On the Merits of Their Constitutional Claims

DHS's separation of Ms. Q. from her son was in accordance with—and in fact mandated by—applicable law, and therefore did not constitute a constitutional violation. ICE FRCs are open-plan facilities with free movement for residents, and the government must retain broad discretion to exclude from these facilities individuals whose criminal history or other factors raise any concern about safety to others housed there. In the *Ms. L.* order specifically excluding Ms. Q. from class certification, Judge Sabraw wrote that ICE's "determination that Ms. Q. [has]

---

Plaintiff's claim does not satisfy either standard.

disqualifying criminal history that precludes reunification with [her son] is entitled to deference. The record indicates Defendants have vetted these parents in good faith and made principled decisions in light of their criminal history and overarching concerns regarding safety of their children and the public." *Ms. L. v. ICE*, Civ. A. No. 18-0428, ECF No. 236 at 3 (S.D. Cal. Sept. 19, 2018). The court found that ICE had "exercised [its] statutorily prescribed discretion in a reasonable manner" and that "matters of detention and parole are peculiarly within the province of the executive branch, and for prudential and other reasons that exercise of discretion ought not to be disturbed under these circumstances." *Id.*

The pending warrant against Ms. Q. from El Salvador and allegations of gang membership contained therein reflect that she is a danger and prevent her from being housed in an ICE FRC or released into the United States. Because Ms. Q. later left El Salvador, a fugitive arrest warrant based on the charge in the original warrant was issued. Based on the information in these warrants and the INTERPOL Red Notice, DHS determined that Ms. Q.'s criminal history prevented her from being housed in an FRC and rendered her ineligible for reunification with her son.

For all of the reasons discussed above, Ms. Q. is not a *Ms. L.* class member and this Court should, consistent with Judge Sabraw's order denying her request to be reunified with her minor son, decline to offer any further consideration of her meritless claims. Plaintiff's detention in ICE custody was a valid exercise of immigration enforcement and child welfare authority. Plaintiff cannot establish a likelihood of success on the merits and the Court should deny her request for a preliminary injunction.

### C. The Balance Of Hardship And The Public Interest Require That Plaintiff Not Receive Special Treatment

The remaining factors required for preliminary injunctive relief—balancing of the harm

to the opposing party and the public interest—merge when the Government is the opposing party. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 435 (2009). Courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982).

Plaintiffs contend that Ms. Q. should not be determined ineligible for reunification on the basis of this warrant because Ms. Q. denies the allegations of gang affiliation and because an immigration judge found that the warrant provided no basis to conclude that Ms. Q. posed any danger. *See* ECF No. 7 at 14. As an initial matter, this is not the proper forum for the plaintiff to make unfounded allegations against the government of El Salvador. Moreover, the immigration court heard the bond evidence on July 31, 2018, prior to the issuance of the Red Notice on August 30, 2018, and the certification attesting to the validity of the warrant the government of El Salvador issued on October 3, 2018. Accordingly, the immigration court did not have a complete picture of the validity of the warrant and the nature of the charges against Ms. Q at the time it rendered its decision on Ms. Q's request for custody redetermination.

More importantly, these later developments do not change the fact that when Ms. Q. entered the country, the government could reasonably determine, as an exercise of its discretion, that Ms. Q.'s pending arrest warrant for gang membership prevented her from being housed in an ICE FRC or released into the community with her child. Even if later events are considered, Ms. Q.'s denial of the facts in the warrant and the immigration judge's findings are insufficient basis to overcome the government's determination because she still presents a risk of danger to the residents of an ICE FRC and a substantial flight risk.[5]

Lastly, this Court should take into consideration the substantial interest of the government

---

[5] An immigration judge has denied Ms. Q.'s request for bond because she was deemed a substantial flight risk, so she is not eligible for release into the community at this time.

in maintaining safe family detention facilities. The government's discretionary authority to choose the appropriate place of detention is paramount in this context because it involves protecting children from unsafe conditions.

Gang members or associates often engage in violent or threatening acts against individuals they perceive as threats. Moreover, gangs are notorious for recruiting children by means of violence or intimidation. ICE cannot risk the chance that a child may be subject to or witness any such activity at an FRC. *See* Harper Decl. ¶ 6. FRCs are also not a good option for individuals who present a significant flight risk such as those who are subject to arrest warrants. FRCs are non-secure and have doors that do not lock for purposes of egress. Residents at FRCs are not escorted under guard and have freedom of movement. If a resident wishes to leave, employees are instructed to allow them to do so. *Id.* at ¶ 7. Here, Ms. Q. is not an appropriate candidate for placement in an FRC because she poses a security risk as well as a serious flight risk due to her fugitive status. *See id.* at ¶ 9.

### D. Plaintiffs Will Not Suffer Irreparable Harm

It is important to note that neither the government's discretionary determination not to detain Ms. Q. at an ICE FRC with her son due to the aforementioned safety and flight risk concerns, nor the *Ms. L.* court's order denying her request for reunification with her son, deprive her of her right to decide whether to be reunified with her son for purposes of removal at the conclusion of her immigration proceedings. Under the ICE Parental Interests Directive, and with HHS concurrence, ICE can reunify Ms. Q. and her son at the time of removal should she elect to do so.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion for injunctive relief.

Dated: November 13, 2018      Respectfully submitted,

JESSIE K. LIU, D.C. Bar No. 472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar No. 924092
Chief, Civil Division

By: /s/ *Scott Leeson Sroka*
SCOTT LEESON SROKA, Member of New York Bar
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
Telephone: 202-252-7113
Scott.Sroka@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of November 2018, service of the foregoing **Opposition to Plaintiffs' Motion for Preliminary Injunction** has been made on counsel of record through the Court's ECF system.

    /s/ *Scott Leeson Sroka*
SCOTT LEESON SROKA
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
Office: (202) 252-7113
Fax: (202) 252-2599
Email: Scott.Sroka@usdoj.gov